UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| KINSALE INSURANCE COMPANY,<br>　　*Plaintiff,*<br><br>v.<br><br>TRANSFORMER POWER SERVICES,<br>LLC AND PERLA LIZETH TREVINO,<br>Individually and A/N/F OF K.L.R.,<br>MINOR, AND CARLOS A. RAMIREZ<br>AS WRONGFUL DEATH<br>BENEFICIARIES OF CARLOS R.<br>RAMIREZ, Deceased,<br>　　*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 7:26-CV-00217 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Kinsale Insurance Company ("Kinsale") files this complaint for declaratory judgment against Defendants Transformer Power Services, LLC ("Transformer Power" or "TPS") and Perla Lizeth Trevino, Individually and A/N/F of K.L.R., Minor, and Carlos A. Ramirez as wrongful death beneficiaries of Carlos R. Ramirez, Deceased ("Underlying Plaintiffs" and with Transformer Power/TPS, collectively, "Defendants"), alleging as follows:

### I.　INTRODUCTION

1.　This is an action for declaratory judgment under 28 U.S.C. §§ 2201-2202 to determine the rights and obligations of the parties under a Commercial General Liability Policy issued by Kinsale to Transformer Power.

2.　Kinsale seeks a judicial declaration that it owes no duty to defend or indemnify Transformer Power in connection with a lawsuit filed against it styled *Perla Lizeth Trevino, Individually and A/N/F of K.L.R., Minor, Carlos A. Ramirez as Wrongful Death Beneficiaries of Carlos R. Ramirez v. Transformer Power Services, LLC*, numbered Cause No. C-1270-25-H, and filed in the 389th Judicial District Court at Hidalgo County, Texas, ("Underlying Lawsuit").

## II.    PARTIES

3.      Plaintiff Kinsale is a corporation organized under the laws of Arkansas with its principal place of business in Richmond, Virginia. Therefore, Kinsale is a citizen of Arkansas and Virginia for diversity purposes.

4.      Defendant Transformer Power is a Texas Limited Liability Company with its principal place of business at 401 East Camellia Avenue, Apt. 101F, McAllen, Hidalgo County, TX 78501. Valeria A. Ayala Trevino is the sole member of Transformer Power. Valeria A. Ayala Trevino is an individual who is a resident and citizen of Hidalgo County, Texas. Therefore, Transformer Power is a citizen of Texas for diversity purposes. Transformer Power may be served with process through its registered agent, Valeria A. Ayala Trevino, 401 East Camellia Avenue, Apt. 101F, McAllen, TX 78501.

5.      Defendant Perla Lizeth Trevino, Individually A/N/F of K.L.R., Minor, and Carlos R. Ramirez, Deceased ("Underlying Plaintiffs") are citizens of Mexico who may be served by serving Perla Lizeth Trevino through her attorney of record, Justin W. Carlisle, Law Office of Domingo Garcia, LLP, 12929 Gulf Freeway, Houston, TX 77034.

## III.    JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

7.      Venue is proper in this Court under 28 U.S.C. § 1391 because the defendant resides in this judicial district and a substantial part of the events giving rise to this action occurred here.

## IV.    FACTUAL BACKGROUND

### A.  Kinsale Policies

8.      Kinsale issued Environmental Combined Liability Policy No. 0100164010-2 to Transformer Power for the policy period of September 17, 2023 to September 17, 2024 at 12:01, subject to all terms, conditions, limitations, and exclusions ("Primary Policy"). A true and correct copy of the Primary Policy, with premium information redacted, is attached as Exhibit 1.

9.      The Primary Policy provides limits of $1,000,000 per occurrence and $2,000,000 in the aggregate for Coverage A ("bodily injury"), subject to a $5,000 deductible.

10.      The Primary Policy is written on an occurrence basis, with coverage applying to "bodily injury" only if the "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory."

11.      Kinsale also issued a Commercial Excess Liability Policy No. 0100259538-0 to Transformer Power for the policy period of September 17, 2023 to September 17, 2024 at 12:01, subject to all terms, conditions, limitations, and exclusions ("Excess Policy," and with the Policy, "Policies"). A true and correct copy of the Excess Policy, with premium information redacted, is attached as Exhibit 2. The Excess Policy follows the form of the "underlying insurance," provided that the damages would be covered by the "underlying insurance", but for the exhaustion of the applicable limits of the insurance unless otherwise limited or restricted by the terms and conditions of the Excess Policy.

12.      The Excess Policy provides limits of $2,000,000 per occurrence and $2,000,000 in the aggregate.

### B.  Underlying Lawsuit

13.      The Underlying Lawsuit alleges wrongful death and related claims arising from bodily injuries and resulting death of Carlos R. Ramirez resulting from an electrocution accident

on or about November 12, 2023 arising from the installation and testing of a 161 kV transformer at the location of 15141 S.H. 177, Jackson, Missouri 63755 pursuant to a Purchase Order issued by WEG Transformers USA LLC of Washington, Missouri to Transformer Power. A true and correct copy of the Underlying Plaintiffs' live, First Amended Petition ("Pleading") is attached as Exhibit 3.

14.     The Pleading in the Underlying Lawsuit contains the following factual allegations:

"6.     The Incident forming the basis of this lawsuit occurred on November 12, 2023 at 15141 S.H. 177, Jackson, Missouri 63755.

7.     WEG Transformers awarded a project to Defendant Transformer Power Services, LLC (aka "TPS") to install electrical transformers in Jackson, Missouri. TPS retained control of the jobsite and supervised the work.

8.     TPS in turn hired Prolec in Mexico to provide labor. Deceased Carlos R. Ramirez was an employee of Prolec and sent to the jobsite in Missouri.[1]

9.     The deceased and crew were installing and testing a 161 kV transformer. The deceased and the crew did not have nor were provided hand protection with an electrical rating. As the deceased was exiting the transformer roof, he touched a tertiary bushing and was electrocuted.

10.     TPS did not have written procedures to include safety checks for performing testing on transformers. TPS did not properly train the workers on the configuration of the transformer system. TPS failed to provide proper safeguarding to workers when wiring a Caterpillar diesel general into the control cabinet of the electrical transformer.

11.     Nothing the deceased did or failed to do contributed to or proximately caused the incident in question or their resulting injuries and damages.

12.     TPS failed to exercise reasonable care over site safety and health hazards, including electrocution. Due to TPS' negligence and gross

---

[1]Based on extrinsic evidence, which the Policy allows Kinsale to use, Deceased Carlos R. Ramirez is an employee of TPS and not Prolec.

negligence, Deceased Carlos R. Ramirez was killed by electrocution."

(Ex. 3., *Pleading*, at APP. 168–169 ¶¶6–12.)

15.     The Underlying Plaintiffs in the Underlying Lawsuit "seek monetary relief over One Million and 00/100 dollars ($1,000,000.00)." (*Id.* at APP. 168 ¶5.) As against Transformer Power, the Underlying Lawsuit involves causes of action for negligence and gross negligence. (*Id.* at APP. 169–170 ¶¶13-18)

## V.     COVERAGE ISSUES

### A.  Primary Policy Provisions

16.     The Primary Policy contains Commercial General Liability Coverage Form, Form CG 00 01 04 13 ("CGL Form of the Primary Policy"), which includes under Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, paragraph 1, the following Insuring Agreement:

> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> (2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**
>
> b.     This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

…

e.     Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Ex. 1., *Policy*, at APP. 007.

17.     The Primary Policy also contains Form ADF2000 0622 – **POLICY AMENDMENT – EXTRINSIC EVIDENCE** ("Extrinsic Evidence Amendment"), which modifies all coverage forms under the Policy as follows:

> Notwithstanding any provision of this Policy to the contrary, all Insuring Agreements in all Coverage Forms, Coverage Sections, Coverage Parts, or endorsements included in this Policy are amended by adding the following:
>
> > Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit.

(*Id.* at APP. 034.)

18.     The Primary Policy also contains Form ECPGEN0001 1022 – **ENVIRONMENTAL COMBINED LIABILITY COMMON TERMS AND CONDITIONS** which includes Paragraph C. titled **COMMON EXCLUSIONS** ("Common Exclusions"), which modifies Commercial General Liability Coverage under the Policy in relevant part, as follows:

> **Duty to Defend Exclusion**
>
> Where there is no coverage under this Policy, there is no duty to defend.

(*Id.* at APP. 024.)

19.     The Primary Policy also contains Form CAS4020 0622– **LIMITATION - INDEPENDENT CONTRACTORS OR SUBCONTRACTORS** ("Independent Contractors Limitation") which states in relevant part:

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

…

The following exclusion is added to this Policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of, related to, or in any way involving any act of any independent contractor or subcontractor contracted by you or on your behalf, unless at the time the "bodily injury", "property damage", or "personal and advertising injury" occurs:

1. The independent contractor or subcontractor contracted by you or on your behalf:

   a. Maintains insurance coverage with scope of coverage and limits of insurance equal to or greater than the insurance coverage and limits of insurance provided by this Policy; and

   b. Provides you with an endorsement or valid certificate of insurance indicating that you have been added to the independent contractor's or subcontractor's policy as an Additional Insured; and

   c. Provides you with an endorsement or valid certificate indicating that the independent contractor's or subcontractor's insurance company has agreed to provide a Waiver of Subrogation endorsement in your favor; and

2. The contract(s) with the independent contractor or subcontractor contain hold harmless and indemnity agreements in your favor, agreeing to defend and indemnify you to the fullest extent permitted by law against any loss or expense arising from or related to work performed for you or on your behalf by such independent contractor or subcontractor.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

(*Id.* at APP. 041.)

20.    The Primary Policy also contains Form EGY3001 0222 – **AMENDED EXCLUSION - ABSOLUTE EMPLOYERS LIABILITY** which states in relevant part:

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Paragraph 2. Exclusions, Employer's Liability**, of this Policy is deleted and replaced with the following:

This insurance does not apply to:

Any claim, "suit", cost or expense arising out of "bodily injury" to:

(1) Any "employee" of any insured arising out of and in the course of:

    (a) Employment by any insured; or

    (b) Performing duties related to the conduct of any insured's business; or

(2) The spouse, child, parent, brother, sister or relative of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether any insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

Wherever the word "employee" appears in this exclusion, it shall mean any member, associate, "leased worker" leased to any insured, contract worker, casual worker, "temporary worker" furnished to any insured, or any person or persons loaned to or volunteering services to any insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

(*Id.* at APP. 084.)

## B. *The Excess Policy*

21. The Excess Policy's Insuring Agreement states:

**SECTION I- COVERAGE**

**A. INSURING AGREEMENT**

We will pay on behalf of the Named Insured those sums in excess of the "underlying insurance" that you become legally obligated to pay as damages because of injury or property damage to which this insurance applies, provided that the damages would be covered by the "underlying insurance(s)", but for the exhaustion of the applicable Limits of Insurance.

This policy shall follow the terms, definitions, conditions and exclusions of the "primary insurance" and of any other "underlying insurance" only to the extent coverage is further limited or restricted by the terms and conditions of such other "underlying insurance"; subject always to the policy period, policy limits, premiums and all other terms, definitions, conditions and exclusions of this policy. If any provisions of the "underlying insurance" conflict with any provisions of this policy, the provisions of this policy will apply.

This policy will not, in any event, provide broader coverage than that provided by the "underlying insurance".

> The amount we will pay for damages shall not exceed the Limits of Insurance stated in Item 1 of the Declarations.

(Excess Policy, Ex. 2 at App. 103.)

22.    The Excess Policy includes all the Exclusions of the Primary Policy, unless there is a conflict and then the exclusions stated in the Excess Policy apply to the coverage afforded under the Excess Policy, to-wit:

**SECTION III- EXCLUSIONS**

> All exclusions in the "underlying insurance", will also apply to the Limits of Insurance and coverages available under this policy. If there are conflicts in the exclusions of the "underlying insurance" with any of the exclusions of this policy, the exclusions in this policy will apply.

(*Id.* at App. 104.)

23.    The following exclusions are expressly stated in the Excess Policy, to-wit:

**SECTION III- EXCLUSIONS**

> …
> 5.  Classification Limitation
>
>     This insurance applies only to the operations that are described in the DESCRIPTION OF OPERATIONS shown on the Declarations page of this policy.
>
> 6.  Duty To Defend
>
>     Where there is no coverage under this policy, there is no duty to defend.

(*Id.* at App. 105.)

24.    The Excess Policy also includes a Limitation – Independent Contractors endorsement (Form CAX4011 0510) (*Id.* at App. 117), a Non-Drop Down Provision (*Id.* at App. 118.), a Exclusion – Employers' Liability (Form CAX3022 0222) (*Id.* at App. 143), and Exclusion – Punitive Damages (Form CAX3045 0110) ((*Id.* at App. 147).

## C.      *Kinsale's Coverage Position*

25.      Kinsale is currently providing a defense under the Primary Policy to Defendant Transformer Power under a full reservation of rights.

26.      Underlying Plaintiffs are nominal defendants, but included in this Complaint in order that the Court's rulings are binding on Underlying Plaintiffs.

27.      Kinsale does not owe a duty to defend Defendant Transformer Power or a duty to indemnify Transformer Power for any damages arising from the incident made the basis of the Underlying Lawsuit based on the Policies' exclusions.

28.      More specifically, pursuant to their respective Independent Contractors Limitation coverage under each of the respective Policies "does not apply to any claim or 'suit' for 'bodily injury,' … arising directly or indirectly out of, related to, or, in any way involving any act of any independent contractor or subcontractor contracted by [Transformer Power] or on [Transformer Power's] behalf" unless certain exceptions not alleged occurs. (Ex. 1, Primary Policy, at APP. 041; Ex. 2, Excess Policy at APP. 117.) Based on the allegations in the Pleading, the claims against Transformer Power in the Underlying Lawsuit arise directly or indirectly out of, relate to, or involve, Decedent's acts as an independent contractor or subcontractor contracted by Transformer Power or on Transformer Power's behalf. (Ex. 3, Pleading, ¶8 at APP. 168.) The allegations in the Pleading fall squarely within the plain language of the Primary Policy's Limitation – Independent Contractors or Subcontractors endorsement and the Excess Policy's Limitation – Independent Contractors. As such, coverage under the Policy does not apply to the Underlying Lawsuit.

29.      Separately, the Extrinsic Evidence Amendment in the Policy permits Kinsale to "look to and consider extrinsic evidence outside of the allegations" in the Pleading "to determine whether [Kinsale] owe[s] a duty to defend or indemnify" Transformer Power against the Underlying Lawsuit. (Ex. 1, Policy, at APP. 034.) According to Transformer Power, Plaintiff was

Transformer Power's employee. As such, coverage for the claim, "suit", cost and expenses arising out the "bodily injuries" he sustained arising out of and in the course of his employment by Transformer Power or performing duties related to the conduct of Transformer Power's business, as well as those of his spouse and child, are precluded by the Amended Exclusion – Absolute Employers Liability endorsement. (Ex. 1, Policy, at APP. 084.) Because there is no coverage for Plaintiffs' claims against Transformer Power, Kinsale also has no duty to defend Transformer Power in the Underlying Lawsuit pursuant to the Duty to Defend Exclusion in the Policy. (*Id.* at APP. 024.)

30.    Further, unless there is coverage under the Primary Policy, there is no coverage under the Excess Policy. (Ex. 2, Excess Policy, Insuring Agreement, at App. 103.)

31.    Additionally, the additional exclusions included in the Excess Policy including Exclusion – Employers' Liability (Form CAX3022 0222) (*Id.* at App. 143), and Exclusion – Punitive Damages (Form CAX3045 0110) ((*Id.* at App. 147) preclude coverage for Transformer Power based on the facts alleged and known concerning the employment status of the Decedent, as well as for any punitive damages, if any, awarded in favor of Plaintiffs and against Transformer Power.

32.    Finally, under both Policies, where Kinsale has no duty to indemnify the insured, it has not duty to defend it. (Ex. 1, Primary Policy, at APP. 007; Ex. 2, Excess Policy at APP. 103.)

33.    Accordingly, Kinsale seeks to establish in this declaratory judgment action that the Policies afford no coverage for the Underlying Lawsuit, and that Kinsale is entitled to withdraw from the defense of Transformer Power therein and does not owe any indemnity for Transformer Power.

## VI.    DECLARATORY RELIEF REQUESTED

34.    An actual controversy exists between Kinsale and Transformer Power regarding coverage for the Underlying Lawsuit.

35.    Kinsale seeks a declaration that under either the Primary Policy or the Excess Policy, Kinsale: (a) has no duty to defend Transformer Power in the Underlying Lawsuit; (b) has no duty to indemnify Transformer Power for any judgment, settlement, or award in the Underlying Lawsuit; and (c) is entitled to withdraw from the defense of Transformer Power upon entry of judgment in this action.

## VII.    PRAYER FOR RELIEF

36.    WHEREFORE, Plaintiff Kinsale Insurance Company respectfully asks the Court to enter judgment declaring that Kinsale owes no duty to defend or indemnify Transformer Power in connection with the Underlying Lawsuit, award Kinsale its costs and expenses incurred in this action, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted:

/s/ Alicia G. Curran
Alicia G. Curran
SD Bar No. 19226
State Bar No. 12587500
acurran@cozen.com
COZEN O'CONNOR
1717 Main Street, Suite 3100
Dallas, Texas 75201-7335
Tel.: (214) 462-3000
Fax: (214) 462-3299

*Counsel for Plaintiff*
*Kinsale Insurance Company*